**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 7, 2011

No. 10-40451

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ABELARDO SANCHEZ-LEDEZMA,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before GARZA, STEWART, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Abelardo Sanchez-Ledezma appeals his sentence of eighteen months imprisonment following his guilty plea to and conviction for illegally reentering the United States following removal, in violation of 8 U.S.C. § 1326. Specifically, Sanchez-Ledezma challenges the district court's imposition of an eight-level sentence enhancement for a prior "conviction for an aggravated felony," namely, the Texas state-law felony of evading arrest or detention with a motor vehicle. U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2L1.2(b)(1)(C) (2009); *see also* TEX. PENAL CODE ANN. § 38.04(b)(1) (West 2003). Sanchez-Ledezma argues that the crime of evading arrest with a motor vehicle is, as a matter of law, not an "aggravated felony" for purposes of § 2L1.2.

No. 10-40451

The logic of our decision in *United States v. Harrimon*, 568 F.3d 531 (5th Cir.), *cert. denied*, 130 S. Ct. 1015 (2009), compels affirmance. While *Harrimon* concerned the analysis of section 38.04(b)(1) as a "violent felony" under a different statute with an importantly different standard, our reasoning in that decision nevertheless governs here.[1]

## I.  Facts & Procedural History

Abelardo Sanchez-Ledezma was charged by a single-count indictment with illegally reentering the United States after departing under an order of removal in violation of 8 U.S.C. § 1326.  Sanchez-Ledezma pleaded guilty to that charge without a plea agreement.  At his rearraignment, Sanchez-Ledezma acknowledged that he was a Mexican citizen; that he had been removed previously from the United States to Mexico; and that he was subsequently found in Laredo, Texas, without having been lawfully admitted to the United States.

Pertinent to the appeal here, at the first sentencing hearing, the district court apprised Sanchez-Ledezma that its independent assessment had concluded that the evading arrest conviction should have been treated as an "aggravated felony" under § 2L1.2(b)(1)(C), for which an eight-level enhancement would apply, rather than a sixteen-level "crime of violence" as proposed in the original PSR or a residual four-level "other felony" as proposed in the amended PSR.  The court gave Sanchez-Ledezma an opportunity to file a written objection to the aggravated felony enhancement, which he did.  The district court overruled that

---

[1] We note, as do the parties, that the Supreme Court has granted certiorari in a case from the Seventh Circuit presenting a very similar issue as that decided in *Harrimon*.  *See United States v. Sykes*, 598 F.3d 334 (7th Cir.), *cert. granted*, 131 S. Ct. 63 (2010).  Our usual practice is to rule based on present law, not to wait for the Supreme Court's decision.  *See United States v. Lopez-Velasquez*, 526 F.3d 804, 808 n.1 (5th Cir. 2008) ("Absent an intervening Supreme Court case overruling prior precedent, we remain bound to follow our precedent even when the Supreme Court grants certiorari on an issue.").  That course is especially appropriate here, where we have previously granted the appellant's motion to expedite the appeal.

No. 10-40451

objection, calculated a Guidelines range of eighteen to twenty-four months imprisonment, and imposed a sentence of eighteen months imprisonment with a three-year term of supervised release.

Sanchez-Ledezma timely appealed his sentence, arguing that his evading arrest conviction should have been treated as a four-level "other felony" under § 2L1.2(b)(1)(D) rather than an eight-level "aggravated felony" under § 2L1.2(b)(1)(C). Sanchez-Ledezma offers no other challenge to his plea, conviction, or sentence on appeal.

## II. Standard of Review

This appeal concerns only the interpretation of the United States Sentencing Guidelines and statutory provisions incorporated in the Sentencing Guidelines by reference. Sanchez-Ledezma's argument that the district court erred in this interpretation raises a claim of "significant procedural error" under *Gall v. United States*, 552 U.S. 38, 51 (2007), which is reviewed de novo. *See United States v. Klein*, 543 F.3d 206, 213 (5th Cir. 2008) ("An error in applying the guidelines is a significant procedural error that constitutes an abuse of discretion."); *United States v. Jeffries*, 587 F.3d 690, 692 (5th Cir. 2009).

## III. Discussion

The sole question presented by this case is whether an offense under section 38.04(b)(1) of the Texas Penal Code is an "aggravated felony" within the meaning of United States Sentencing Guidelines Manual § 2L1.2(b)(1)(C). The district court answered that question in the affirmative, relying heavily on our decision in *Harrimon*, and we agree.

The first step in our analysis is tracing the definition of "aggravated felony." The Application Notes to § 2L1.2 provide that, "[f]or purposes of subsection (b)(1)(C), 'aggravated felony' has the meaning given that term in section 101(a)(43) of the Immigration and Nationality Act," codified at 8 U.S.C. § 1101(a)(43). U.S.S.G. § 2L1.2 cmt. n.3(A). Section 1101(a)(43) in turn defines

aggravated felony as including, among other enumerated crimes, "a crime of violence (as defined in section 16 of title 18 [of the United States Code], but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F) (2006). Section 16, in turn, defines "crime of violence" as

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16 (2006). The district court held, and the parties agree, that only the § 16(b) definition is potentially applicable in this case; and it is similarly undisputed that Sanchez-Ledezma's prior conviction was a felony. Consequently, the true question presented by this appeal is whether the crime of evading arrest with a motor vehicle is an "offense . . . that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 16(b). This inquiry requires a "categorical approach," *United States v. Chapa-Garza*, 243 F.3d 921, 924 (5th Cir. 2001), under which we "look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to [the particular defendant's] crime," *Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004). We have further explained that a "substantial risk" of physical force "requires a strong probability that the application of physical force during the commission of the crime will occur," *United States v. Rodriguez-Guzman*, 56 F.3d 18, 20 (5th Cir. 1995); that the use of force is merely "conceivable" is not sufficient, *United States v. Landeros-Gonzales*, 262 F.3d 424, 427 (5th Cir. 2001).

We turn, then, to the crime of which Sanchez-Ledezma was previously convicted, evading arrest with a motor vehicle. In relevant part, the version of

No. 10-40451

section 38.04 of the Texas Penal Code under which Sanchez-Ledezma was convicted provided:

> (a) A person commits an offense if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him.

> (b) An offense under this section is . . . (1) a state jail felony if the actor uses a vehicle while the actor is in flight . . . .

TEX. PENAL CODE ANN. § 38.04 (West 2003).[2]  Our interpretation of this statute in relation to the § 16(b) definition of "crime of violence" is a question of first impression as such, but we are guided in that analysis by our recent decision in *Harrimon*, 561 F.3d at 534–37.[3]

In *Harrimon*, we considered whether the crime of evading arrest with a motor vehicle was "typically . . . purposeful, violent, and aggressive" as required by the Supreme Court's interpretation of § 924(e)(2)(B)(ii) in *Begay v. United States*, 553 U.S. 137, 144–45 (2008) (internal quotation marks omitted).  Our assessment concluded

> that fleeing by vehicle is purposeful, violent, and aggressive.  First, it is purposeful: . . . fleeing by vehicle requires intentional conduct. Further, it is aggressive.  As commonly understood, aggressive behavior is offensive and forceful and characterized by initiating hostilities or attacks.  Fleeing by vehicle requires disregarding an officer's lawful order, which is a clear challenge to the officer's authority and typically initiates pursuit.  This active defiance of an attempted stop or arrest is similar to the behavior underlying an escape from custody, which, as the Supreme Court noted in

---

[2] The provision was amended in 2009 and renumbered in part. *See* Act of May 27, 2009, 81st Leg., R.S., ch. 1400, § 4, 2009 Tex. Gen. Laws 1400 (codified at TEX. PENAL CODE ANN. § 38.04 (West Supp. 2010)).

[3] We note at the outset that the appellant is quite correct that *Harrimon* decided whether a conviction under section 38.04(b)(1) was a "violent felony" within the meaning of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e) (2006), which depends upon a test that is different in kind from that under § 16(b).  Under the provisions of the statute itself, a "violent felony" includes any felony that "involves conduct that presents of serious risk of physical injury to another."  *Id.* § 924(e)(2)(B)(ii).

5

> *Chambers* [*v. United States*], is "less passive" and "more aggressive" than that likely underlying failure to report.  Fleeing by vehicle is also violent: the use of a vehicle, usually a car, to evade arrest or detention typically involves violent force which the arresting officer must in some way overcome. . . .  [N]ot only the arresting officer or officers, but also pedestrians and other motorists are subject to this force.  Further, fleeing by vehicle will typically lead to a confrontation with the officer being disobeyed, a confrontation fraught with risk of violence.

568 F.3d at 534–35 (citing and quoting *Chambers v. United States*, 129 S. Ct. 687, 691 (2009)) (other internal citations and quotation marks omitted).

Sanchez-Ledezma argues that *Harrimon* does not expressly evaluate the risk that an actor would intentionally employ force in the course of committing a violation of section 38.04(b)(1) and focuses on the incidental risk of injury to bystanders rather than the risk of the intentional use of force.  As the passage quoted above makes quite clear, that argument fails.  We explained in *Harrimon* that the crime at issue in both that case and this "typically involves violent force which the arresting officer must in some way overcome" and "will typically lead to a confrontation with the officer being disobeyed, a confrontation fraught with risk of violence."  568 F.3d at 535.[4]  Our ultimate conclusion was that evading arrest with a vehicle met the standard for "aggressiveness" under *Begay*, which we characterized as involving "offensive and forceful [behavior] . . . characterized by initiating hostilities or attacks."  *Id.* at 534.  These conclusions bear directly on the question of the risk of the use of physical force against a person in the course of committing the offense.

Evading arrest with a motor vehicle is, by the logic of *Harrimon*, a "crime of violence" for purposes of § 16(b), and therefore an "aggravated felony" for purposes of § 1101(a)(43)(F).  The district court properly applied the

---

[4] The repeated use of the word "typically" reflects the fact that the ACCA, like § 16(b), requires a categorical approach.  *See Taylor v. United States*, 495 U.S. 575, 602 (1990).

No. 10-40451

§ 2L1.2(b)(1)(C) eight-level enhancement to Sanchez-Ledezma's sentence calculation.

## IV. Conclusion

For the foregoing reasons, the judgment and sentence imposed by the district court are AFFIRMED.